IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01466-MSK-MJW

RUNNING FOXES PETROLEUM, INC.,

Plaintiff(s),

v.

NIGHTHAWK PRODUCTION LLC,

Defendant(s).

---

## RECOMMENDATION ON
## DEFENDANT NIGHTHAWK PRODUCTION LLC'S MOTION TO DISMISS
### (Docket No. 22)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case was referred to this court pursuant to an Order Referring Case entered by Chief Judge Marcia S. Krieger on May 30, 2014 (Docket No. 13).

Now before the court for a report and recommendation is Defendant Nighthawk Production, LLC's ("Nighthawk") Motion to Dismiss (Docket No. 22), which is brought pursuant to Fed. R. Civ. P. 12(b)(6), and its brief in support of its motion (Docket No. 23). Plaintiff Running Foxes Petroleum, Inc. ("RFP") filed a Response (Docket No. 30), and Nighthawk filed a Reply (Docket No. 39). The court has very carefully considered these motion papers as well as applicable Federal Rules of Civil Procedure and case law. In addition, the court has taken judicial notice of the court file. The court now being fully informed makes the following findings, conclusions of law, and recommendation that the motion be denied.

**PLAINTIFF'S CLAIMS**

RFP alleges the following in its Complaint (Docket Nos. 1-2 and 5).  RFP is the

owner of working interests ("WI" or "WIs") and overriding royalty interests ("ORRI" or

"ORRIs") in leasehold estates created by oil and gas leases jointly owned in whole or in

part with Nighthawk.  RFP and Nighthawk entered into a Joint Operating Agreement

("Middle Mist JOA") dated October 11, 2007, for an oil and gas project in Washington

and Lincoln Counties, Colorado (hereinafter the "Middle Mist Project.").  RFP was

initially named the "Operator" under the Middle Mist JOA.  Article VIII of that JOA

contains the following provisions that require a party to the JOA who acquires a renewal

or replacement of an oil and gas lease subject to that JOA to offer to the other parties

the right to acquire their proportionate share of such oil and gas lease:

B.  Renewal or Extension of Leases:

If any party secures a renewal or replacement of an Oil and Gas Lease or
Interest subject to this agreement, then all other parties shall be notified
promptly upon such acquisition or, in the case of a replacement Lease
taken before expiration of an existing Lease, promptly upon expiration of
the existing Lease.  The Parties notified shall have the right for a period of
thirty (30) days following delivery of such notice in which to elect to
participate in the ownership of the renewal or replacement Lease, insofar
as such Lease affect lands within the Contract Area, by paying to the
party who acquired it their proportionate shares of the acquisition cost
allocated to that part of such Lease within the Contract Area, which shall
be in proportion to the Interest held at that time by the parties in the
Contract Area.  Each party who participates in the purchase of a renewal
or replacement Lease shall be given an assignment of its proportionate
interest therein by the acquiring party.
. . .

The provisions of this Article shall apply to renewal or replacement Leases
whether they are for the entire interest covered by the expiring Lease or
cover only a portion of its area or an interest therein.  Any renewal or
replacement Lease taken before the expiration of its predecessor Lease,
or taken or contracted for or becoming effective within six (6) months after
the expiration of the existing Lease, shall be subject to this provision so
long as this agreement is in effect at the time of such acquisition or at the

> time the renewal or replacement Lease become effective; but an [sic] Lease taken or contracted for more than six (6) months after the expiration of an existing Lease shall not be deemed a renewal or replacement Lease and shall not be subject to the provision of this agreement.

(Docket No. 1-2 and 5 at 2-3).

On March 3, 2008, Over The Hill Land Services, LLC ("OTH") acquired an oil and gas lease (the "Knutson Bottom Lease") on lands included in the "Contract Area" covered by the Middle Mist JOA.  The landowner's royalty under the Knutson Bottom Lease was 1/8th or 12.5%.

On June 9, 2009, pursuant to an assignment, RFP acquired the Knutson Bottom Lease from OTH effective between the parties as of January 13, 2009 ("**Assignment No. 1**").  OTH reserved an ORRI in the amount of 0.5% of all oil and gas produced from the Knutson Lands and other lands.  Also on June 30, 2009 (and effective between the parties as of January 14, 2009), RFP assigned to Steven A. Tedesco ORRIs equal to the difference between 20% and existing burdens (i.e., landowner's royalties and overriding royalties), which did not expressly apply to any extension, renewal, or substitute lease ("**Assignment No. 2**").  The existing burdens on the Knutson Bottom Lease were the landowner's royalty of 12.5% together with the ORRI owed to OTH of 0.5% - for total existing burdens of 13%.

Also on June 30, 2009, RFP assigned an interest in the Knuston Bottom Lease to Nighthawk Energy PLC (wholly owned by Nighthawk PLC), stated to be effective between the parties as of January 15, 2009) ("**Assignment No. 3**").  Pursuant to this assignment, RFP assigned to Nighthawk PLC an undivided 50% WI in the Knutson Bottom Lease and other leases but reserved an ORRI equal to the difference between

4

20% and existing burdens, which expressly applied to any extension, renewal, or substitute lease.  Nighthawk PLC assigned its interest in the Knutson Bottom Lease that it obtained from this assignment to Nighthawk.  As a result, RFP and Blackhawk each owned a 50% WI in the Knutson Bottom Lease.

On May 6, 2011, pursuant to an Assignment of Overriding Royalty Interests (**"Assignment No. 4"**) (stated to be effective May 1, 2011), RFP assigned to Tedesco an ORRI equal to the difference between 20% and existing burdens, which did not expressly apply to any extension, renewal, or substitute lease.

RFP and Nighthawk entered into a Purchase and Sale Agreement ("**PSA 1**") dated December 23, 2011, pertaining to a large number of oil and gas leases, including the Knutson Bottom Lease.  Pursuant to PSA No. 1, Nighthawk succeeded as "Operator" under the Middle Mist JOA.  In addition, Nighthawk acquired 50% of RFP's remaining WI in the Knutson Bottom Lease pursuant to an Assignment of Interests from RFP to Nighthawk ("**Assignment No. 5**"), which was executed on January 19, 2012, and stated to be effective between the parties as of January 20, 2012, at 1:00 a.m. local time.  In Assignment No. 5, RFP reserved ORRIs equal to the difference between 20% and existing burdens.  After giving effect to Assignment No. 5, RFP owned a 25% WI, and Nighthawk owned a 75% WI in the Knutson Bottom Lease.

On October 8, 2012, RFP and Nighthawk entered into a Settlement Agreement (the "Settlement Agreement") to resolve certain disputes that had arisen between them. Pursuant to the terms of the Settlement Agreement, Nighthawk was given the option to purchase RFP's remaining 25% WI in various oil and gas properties, including the Knutson Bottom Lease.  The Settlement Agreement specifically provided that the

transfer of the remaining 25% WI would exclude RFP's ORRI.

In January 2013 Nighthawk acquired 100% of the WI in a certain Oil and Gas Lease (the "Knutson Top Lease"), dated January 16, 2013, and filed for recording on February 8, 2013.  The Knutson Top Lease was taken prior to the expiration of the Knutson Bottom Lease and covered a portion of the lands covered by the Knutson Bottom Lease.  The existing burdens on the Knutson Top Lease were the landowner's royalty of 15% together with the ORRI owed to OTH of .5% (see Assignment No. 1), for total existing burdens of 15.5%.  An ORRI equal to the difference between 20% and 15.5% equates to a 4.5% ORRI.  As a substitute or renewal lease covering all or a portion of the lands covered by the Knutson Bottom Lease, the Knutson Top Lease was subject to the requirements of Article VII-B of the Middle Mist JOA.

The Knutson Bottom Lease expired by its terms on March 2, 2013. Contrary to the requirements contained in Article VII-B of the Middle Mist JOA, Nighthawk failed to give RFP notice of Nighthawk's acquisition of the Knutson Top Lease upon the expiration of the Knutson Bottom Lease.  As a result, Nighthawk deprived RFP of its right to acquire its proportionate WI (i.e., 25%) in the Knutson Top Lease.

On July 30, 2013, RFP and Nighthawk entered into a Purchase and Sale Agreement ("**PSA 2**") pertaining to a number of oil and gas properties.  It specifically excluded RFP's ORRI from the sale.  Pursuant to PSA 2, Nighthawk and RFP entered into certain Assignment of Interests ("**Assignment No. 6**"), executed July 30, 2013, but dated effective as of October 8, 2012.  Pursuant to the terms of Assignment No. 6, RFP reserved its ORRI equal to the difference between 20% and existing burdens. Assignment No. 6 did not specify RFP's interests in the Knutson Top Lease and did not describe either the Knutson Top Lease or the Knutson Lands.

6

The documents and instruments relating to the Middle Mist Projects (the Assignments and PSAs described above) are consistent in that Nighthawk was to receive 80% of the net revenue in the Middle Mist Project, and RFP was to receive the difference between 20% and existing burdens (landowner's royalties and overriding royalties) in the Middle Mist Project.  Nighthawk is receiving proceeds of production from the Knutson Top Lease, including proceeds belonging to RFP, yet Nighthawk has made no payment to RFP attributable to the Knutson Top Lease.

RFP brings the following claims for relief: (1) breach of contract - Middle Mist JOA; (2) breach of the covenant of good faith and fair dealing - Middle Mist JOA; (3) specific performance - Middle Mist JOA; (4) declaratory relief - RFP's interest in Knutson Top Lease; (5) breach of fiduciary duty; and (6) accounting.

## NIGHTHAWK'S MOTION TO DISMISS

Nighthawk moves to dismiss the Complaint in its entirety for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), asserting that "[u]nder the plain language of the contracts attached to RFP's complaint, it is impossible for RFP to amend its complaint to state a claim for relief."  (Docket No. 22 at 1).  Nighthawk contends that RFP failed to allege sufficient facts to raise a plausible claim that Nighthawk breached any of the parties' contracts, failed to plead sufficiently any damage resulting from the alleged breach, failed to plead the existence of a contract or benefits which Nighthawk could have sought to avoid as it failed to plead sufficient facts to show it held a royalty interest on the subject property, failed to plead the existence of any contractual duty at the time RFP asserts a duty was owed, failed to plead the existence of a valid contract at the time for which RFP seeks specific performance, failed to plead sufficiently that RFP holds any valid interest in the 2013

Lease, failed to plead the existence of a fiduciary duty running to RFP and any damages resulting from the alleged breach of fiduciary duty, and failed to plead sufficiently that RFP holds any valid interest in the leases at issue for which it claims it is entitled to an accounting.

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The Court's function on a Rule 12(b)(6) motion . . . is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is sufficient to plausibly state a claim." Spring Creek Exploration & Prod. Co., LLC v. Hess Bakken Investment II, LLC, 2014 WL 4400764, at *2 (D. Colo. Sept. 5, 2014). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008 WL 163016, at *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Twombly, 550 U.S. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint

8

must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." <u>Ridge at Red Hawk, L.L.C. v. Schneider</u>, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting <u>Twombly</u>, 127 S. Ct. at 1974).

The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" <u>Khalik v. United Air Lines</u>, 671 F.3d 1188, 1191 (10th Cir. 2012). The Circuit court has further "noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'" <u>Id.</u> The court thus "concluded the *Twombly/Iqbal* standard is 'a wide middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" <u>Id.</u>

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. <u>Morse v. Regents of the Univ. of Colo.</u>, 154 F.3d 1124, 1126-27 (10th Cir. 1998); <u>Seamons v. Snow</u>, 84 F.3d 1226, 1231-32 (10th Cir. 1996). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ." <u>Khalik</u>, 671 F.3d at 1190 (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." <u>Id.</u> at 1191.

9

A court generally considers only the contents of the Complaint when ruling on a motion to dismiss brought pursuant to Rule 12(b)(6).  Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010).  "Exceptions to this general rule include: documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes their authenticity; and 'matters of which a court may take judicial notice.'"  Henson v. Bank of Am., 935 F. Supp.2d 1128, 1136 (D. Colo. 2013) (quoting Gee, 627 F.3d at 1186).  "If a plaintiff does not incorporate by reference or attach a document to its complaint, a defendant may submit an undisputably authentic copy which may be considered in ruling on a motion to dismiss."  Id.  Here, attached to the Complaint are the following documents: the Middle Mist JOA (Pl.'s Ex. A, Docket No. 1-3), the Knutson Bottom Lease (Pl.'s Ex. B, Docket No. 1-4), Assignment No. 1 (Pl.'s Ex. C, Docket No. 1-5), Assignment No. 2 (Pl.'s Ex. D, Docket No. 1-6), Assignment No. 3 (Pl.'s Ex. E, Docket No. 1-7), Assignment No. 4 (Pl.'s Ex. F, Docket No. 1-8), Assignment No. 5 (Pl.'s Ex. G, Docket No. 1-9), the Settlement Agreement (Pl.'s Ex. H, Docket No. 3 - originally filed under restriction but unrestricted pursuant to courtroom minutes/minute order on 7/28/14); the Knutson Top Lease (Pl.'s Ex. I, Docket No. 1-10), and Assignment No. 6 (Pl.'s Ex. J, Docket No. 1-11).  As an exhibit to its motion to dismiss, Nighthawk has filed a letter - an "additional Agreement regarding JOA" dated October 30, 2012 (Docket No. 23-1).  That document, however, was not even mentioned in the Complaint, and the court has thus not considered it in rendering this report and recommendation on the motion to dismiss.

"In Colorado, a claim for breach of contract has four elements: (1) the existence of a contract; (2) plaintiff's performance or some justification for nonperformance; (3) defendant's failure to perform; and (4) resulting damages to the plaintiff."  Spring Creek

10

Exploration & Prod. Co., 2014 WL 4400764, at *3 (citing W. Distrib. Co. v. Diodosio,
841 P.2d 1053, 1058 (Colo. 1992)).  Generally, contract construction is a matter of law
for the court to decide.  Id. (citing Union Ins. Co. v. Houtz, 883 P.2d 1057, 1061 (Colo.
1994)).  In construing a contract, the primary goal is to "give effect to the intention of the
parties."  Town of Minturn v. Tucker, 293 P.3d 581, 590 (Colo. 2013).  "Whenever
possible, this intent should be ascertained from the plain language of the [contract]
alone."  Mid-Century Ins. Co. v. Robles, 271 P.3d 592, 594 (Colo. App. 2011).  The
terms are construed according to their "plain meaning, avoiding strained and technical
interpretations."  Fire Ins. Exchange v. Sullivan, 224 P.3d 348, 351 (Colo. App. 2009).
"The court should interpret a contract in its entirety with the end in view of seeking to
harmonize and to give effect to all provisions so that none will be rendered
meaningless."  Copper Mountain, Inc. v. Industrial Systems, Inc., 208 P.3d 692, 697
(Colo. 2009) (quotation marks omitted).  Discerning the meaning of an ambiguous
contract provision, however, is the responsibility of the finder of fact.  Spring Creek
Exploration & Prod. Co., 2014 WL 4400764, at *3.  A contract provision is ambiguous if
"it is susceptible of more than one reasonable interpretation."  Sachs v. Am. Family Mut.
Ins. Co., 251 P.3d 543, 546 (Colo. App. 2010).

Here, Nighthawk asserts that the Complaint can be easily dismissed because
RFP fails to state a single, viable legal claim upon which relief can be granted.
Nighthawk notes that it and RFP jointly owned several oil and gas leases covering lands
located in Washington and Lincoln Counties in eastern Colorado.  Their obligations to
each other were initially determined under the 2007 Middle Mist JOA.  Years later,
however, in 2013, they entered into PSA 2 whereby Nighthawk purchased all of RFP's
remaining WI in the oil and gas leases.  Significantly, according to Nighthawk, the

11

parties expressly agreed to the effective date of this final PSA as **October 8, 2012**.

Nighthawk contends that that effective date is crucial because it allegedly voids RFP's

claims in this action for breach of contract, breach of the duty of good faith and fair

dealing, specific performance, declaratory relief, and accounting because effective that

date, RFP had no remaining interest in the joint operating area and no interest in the

2008 Lease owned by Nighthawk.  Therefore, Nighthawk asserts, it owed no duties -

contract or otherwise - to RFP at the time Nighthawk secured the 2013 Knutson Top

Lease.  Furthermore, Nighthawk contends that RFP's claim for breach of fiduciary duty

is in direct conflict with the clear and unambiguous language of RFP's and Nighthawk's

contracts referenced and attached to RFP's Complaint and contrary to settled Colorado

law.  For substantially the reasons stated in RFP's Response, however, the court

recommends that the Complaint not be dismissed at this time.

A review of the Complaint shows that it does plead the existence of a contract

and damages resulting for Nighthawk's alleged breach.  (See Docket No. 5 at ¶¶ 10-14,

16-20, 23, 24, 26-30, 36-43, 49-51).  Furthermore, Nighthawk's contention that RFP

has failed to plead a breach of contract and damages is based upon its argument

concerning the legal implication of the October 8, 2012, "effective date" of the PSA 2

(which was entered into on July 30, 2013).  According to the Complaint, the breach of

contract allegedly occurred as a result of Nighthawk's failure to give RFP notice of its

obtaining the Knutson Top Lease prior to the March 2, 2013, expiration of the Knutson

Bottom Lease as required by the Middle Mist JOA.  Therefore, the alleged breach of

contract purportedly occurred between the PSA 2's retroactive effective date - October

8, 2012 - and the date PSA 2 was entered into - July 30, 2013.  Nighthawk essentially

argues that its contractual obligation to give RFP notice of the Knutson Top Lease

12

during that prior interim period was obviated as a result of the retroactive October 8, 2012, effective date of PSA 2.

RFP, however, seems to phrase it as an issue as to whether the earlier effective date automatically operated as a *release of claims* that accrued under the previous contract.  RFP argues that while Colorado law allows parties to contract for a start date of their obligations that is earlier than the execution date of their agreement, there is no Colorado authority stating that an earlier effective date automatically operates as a release of claims that accrued under the previous contract.  Furthermore, RFP contends that assuming that, in some instances, an earlier effective date could operate as a release of prior breaches, neither the plain language of PSA 2 nor the facts appearing on the face of the Complaint support the conclusion that PSA 2 was intended to operate as a release of RFP's claims at issue in this case.  RFP notes that under Colorado law, the "scope of a release is determined primarily by the intent of the parties as expressed in the release instrument, considered in light of the nature of the claim and the objective circumstances underlying the execution of the instrument."  (Docket No. 30 at 4, quoting Cingoranelli v. St. Paul Fire & Marine Ins. Co., 658 P.2d 863, 865 (Colo. 1983)).  RFP asserts that there is no "release instrument" here as required by Colorado law.  In addition, RFP notes that the "Effective Time" paragraph in PSA 2 states as follows:

> The purchase and sale of the Conveyed Interests shall be effective as of 1:00 am Mountain Time on October 8, 2012 (the "Effective Time"), *but title thereof shall be delivered at the closing ("Closing") which shall occur on the Closing Date [i.e., July 30, 2013].*

(Docket No. 23-2, p. 5, ¶ 1.02) (emphasis in RFP's response).  RFP asserts that the plain language of the "Effective Time" paragraph specifically relates to the timing of the

sale for determination of certain rights other than ownership of the "Conveyed Interests" between the parties, not <u>all</u> rights and responsibilities of the parties.  RFP notes that PSA 2 defines "Conveyed Interests" as all of RFP's "right, title and interest in and to the Interests" unless otherwise excluded.  (Docket No. 30 at 4-5, citing Docket No. 23-2, p. 5, ¶ 1.01).  In addition, RFP asserts that "Interests" are defined at length elsewhere in PSA 2, but they are <u>not</u> expressly defined to include choses in action under prior agreements that accrued after the Effective Time but prior to the Closing Date of PSA 2, nor does PSA 2 contain language that can be construed to release any claims that the parties might have against each other for prior breaches of the parties' earlier contracts.  In addition, RFP asserts that a release of claims ordinarily does not operate to release unknown claims unless the release expressly states as much.

RFP further contends there is nothing pled in the Complaint from which it could reasonably be inferred that RFP was on notice of Nighthawk's breach of the Middle Mist JOA prior to the parties' execution of the 2013 PSA 2.  On the contrary, RFP alleges in its pleading that Nighthawk concealed its breach of the Middle Mist JOA (Docket No. 5, ¶¶ 42, 57, 58), and RFP asserts that that allegation must be accepted as true for purposes of this motion.

This court agrees with RFP that as shown, the plain language of the documents at issue does not necessarily support Nighthawk's arguments for dismissal.  The court finds that contracts are ambiguous with respect to the key issue here, which precludes the court from ruling on RFP's contract-related claims (claims 1-4 and 6) as part of a motion to dismiss.  The Complaint contains enough facts to state a claim for relief that is plausible on its face and is thus legally sufficient.

Nighthawk also asserts that RFP's fifth claim for relief should be dismissed

14

because RFP failed to plead both the existence of a fiduciary duty and any damages

resulting from that breach.  According to Nighthawk, this claim is not plausible on its

face based on the plain language of the agreements between the parties.  The court,

however, will not again address Nighthawk's arguments regarding the October 8, 2012,

effective date which purportedly resulted in RFP retaining no interest in the 2008 Lease.

Nighthawk further contends that the breach of fiduciary duty claim fails because under

both the unambiguous terms of the contract and under Colorado law, it owed no

fiduciary duty to RFP.  In support of this argument, Nighthawk quotes some of the

language contained in the 2007 Middle Mist JOA.  As RFP points out in its Response,

however, Nighthawk failed to provide the full text of the provision upon which Nighthawk

bases its argument.  The relevant language of Article VII(A) of the Middle Mist JOA

provides:

> . . . In their relations with each other under this agreement, the parties
> shall not be considered fiduciaries or to have established a confidential
> relationship but rather shall be free to act on an arm's-length basis in
> accordance with their own respective self-interest, **subject, however, to
> the obligation of the parties to act in good faith in their dealings with
> each other with respect to activities hereunder.**

(Docket No. 1-11 at 15 - Art. VII (A)) (emphasis added by RFP in Docket No. 30 at 12).

RPF asserts that

> [t]he plain language of Article VII(A) refutes Nighthawk's contention that
> the parties are not fiduciaries.  While the excerpt quoted by Nighthawk
> establishes that Nighthawk and RFP may not be fiduciaries in their
> broader business interests outside the scope of the Middle Mist JOA, the
> "subject, however" clause of Article VII(A) makes clear that the parties are
> in fact fiduciaries with respect to the activities that are the subject of the
> Middle Mist JOA.  That clause of Article VII(A) requires Nighthawk and
> [RFP] "to act in good faith in their dealings with each other" regarding the
> Middle Mist JOA.  It is well settled that the duty of good faith is central to a
> fiduciary's obligations. . . . .

(Docket No. 30 at 12-13) (quotation omitted).

As noted by RFP in its Response, Nighthawk cites Degenhart v. Gold King Petroleum Corp., 851 P.2d 304 (Colo Ct. App. 1993), in support of its proposition that "the mere reservation of an overriding royalty in the assignment of an ail and gas lease does not create a fiduciary relationship." (See Docket No. 23 at 19). However, as pointed out by RFP, Nighthawk ignores key language of Degenhart and the Middle Mist JOA. While the Degenhart court declined to find a fiduciary relationship existed on the facts before it, it did not categorically find that a fiduciary relationship could never exist in connection with an agreement concerning ORRIs. Rather, that court noted that "some cases have held the operator to be under an implied duty of fair dealing which bars conduct intended to extinguish the non-operating interest. . . . Such holdings are factually based either upon a close relationship between the parties, bad faith on the part of the lessee, or specific language of the assignment protecting the overriding royalty interest" such as where there is "language that extends such interest to renewals and extensions of the lease." Degenhart, 851 P.2d at 306. Here, as asserted by RFP, such circumstances discussed in Degenhart appear to exist: RFP and Nighthawk had an extensive, long-standing relationship prior to the conduct alleged here, Article VII(A) of the Middle Mist JOA expressly preserved a duty of good faith between the parties with regard to performance of their duties under the agreement, and Article VII(B) of the Middle Mist JOA expressly extended the parties' obligations under the agreement concerning acquisition of proportionate shares to any "renewal or replacement Leases whether they are for the entire interest covered by the expiring Lease or cover only a portion of its area or an interest therein." In sum, the court finds that the Complaint states a claim for breach of fiduciary duty that is plausible on its face and is thus legally sufficient.

16

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that Defendant Nighthawk Production LLC's Motion to Dismiss (Docket No. 22) be **denied.**

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives _de novo_ review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated: February 13, 2015                    s/ Michael J. Watanabe
      Denver, Colorado                          Michael J. Watanabe
                                        United States Magistrate Judge