**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 14-cv-01466-MSK-MJW

**RUNNING FOXES PETROLEUM, INC.,**

    Plaintiff,

v.

**NIGHTHAWK PRODUCTION LLC,**

    Defendant.

**OPINION AND ORDER GRANTING IN PART
AND RESERVING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**THIS MATTER** comes before the Court on the Defendant's Motion for Summary Judgment **(#76)**, the Plaintiff's Response **(#88)**, and the Defendant's Reply **(#93)**. The Court exercises subject matter jurisdiction under 28 U.S.C. § 1332.

### I. Material Facts

Having reviewed the record and submissions of the parties, the Court finds the following material facts to be undisputed, or where there is a dispute, they are construed in the light most favorable to the Plaintiff.

The Plaintiff and the Defendant are entities involved the oil and gas industry. For several years, they both held mineral interests located across four counties in Colorado. Their mutual obligations to one another were governed by several joint operating agreements (JOAs). But the parties had disagreements, which they attempted to resolve with a series of new agreements that arguably modified their rights and obligations under the operative JOAs.

In this action, the Plaintiff contends that the Defendant breached the terms of the Middle Mist JOA by failing to maintain one lease, the Knutson Bottom Lease, and by failing to give notice that it acquired a new, replacement lease, the Knutson Top Lease. The Defendant seeks summary judgment on largely undisputed facts.

### A. The Umbrella Agreements between the Parties

The parties entered into the Middle Mist JOA[1] in October 2007. The Middle Mist JOA defines its contract area as "all of the lands, Oil and Gas Leases and/or Oil and Gas Interests intended to be developed and operated for Oil and Gas purposes" in Lincoln and Washington Counties.[2] At the time the Middle Mist JOA was executed, the Plaintiff and the Defendant each held a 50% working interest[3] in the leases subject to the JOA.

Article VIII.B of the Middle Mist JOA required the parties to notify each other if one of them secured a "renewal or replacement" of any oil and gas lease or interest subject to the JOA.[4]

---

[1] The Middle Mist JOA was executed on American Association of Petroleum Landmen (A.A.P.L.) Form 610-1989, Model Form Operating Agreement.

[2] Specifically, the Middle Mist JOA covers all sections in following parcels: Township 5 South Range 54 West; Township 5 South Range 55 West; Township 5 South Range 56 West; Township 6 South Range 54 West; Township 6 South Range 55 West; Township 6 South Range 56 West; Township 7 South Range 54 West; Township 7 South Range 55 West; and Township 7 South Range 56 West.

[3] In the oil and gas industry, when a lessor lets his property, he relinquishes his right to the mineral estate in exchange for a smaller, non-risk and non-cost bearing royalty interest in any minerals discovered. *See Garman v. Conoco*, 886 P.2d 652, 656 (Colo. 1994). The lessee is granted the right to the mineral estate, which includes the operational, risk-bearing "working interest" and the right to receive the larger share of the proceeds. *Id.*

[4] In relevant part, Article VIII.B provides:

> If any party secures a renewal or replacement of an Oil and Gas Lease or Interest subject to this agreement, then all other parties shall be notified promptly upon such acquisition or, in the case of a replacement Lease taken before expiration of an existing Lease, promptly upon expiration of the existing Lease. The parties

The notified party then had 30 days in which to elect to participate in the renewal or replacement lease. To participate, the notified party was required to pay a share of the acquisition costs. The amount to be paid was in proportion to the interest that the notified party held in the "Contract Area" at the time the new lease was acquired. The "Contract Area" is conceptually defined as all of the lands, leases, and interests that are intended to be developed under the Middle Mist JOA.

On December 23, 2011, the parties entered into a Purchase and Sale Agreement (2011 PSA) with respect to the "Jolly Ranch Project Properties." Under the 2011 PSA, the Plaintiff sold the Defendant half of its working interest in several leases. The term "Jolly Ranch Project Properties" is not specifically defined in the 2011 PSA, but there is an attached list of leases, located across Washington, Lincoln, Elbert, and Kiowa counties, that were subject to the agreement. Among those listed were several leases located on property subject to the Middle Mist JOA. The effect of the transaction was to reduce Plaintiff's working interest in the leases to 25% with Defendant holding a 75% working interest.

Thereafter the parties had disagreements, which they resolved in a Settlement Agreement dated October 8, 2012. As pertinent here, paragraph 5 of the Settlement Agreement created an exclusive option for the Defendant to purchase the Plaintiff's remaining 25% working interest in the "Jolly Ranch Project Properties," exercisable at any time until July 5, 2013. During the

---

> notified shall have the right for a period of thirty (30) days following delivery of such notice in which to elect to participate in the ownership of the renewal or replacement Lease, insofar as such Lease affects lands within the Contract Area, by paying to the party who acquired it their proportionate shares of the acquisition cost allocated to that part of such Lease within the Contact Area, which shall be in proportion to the interest held at that time by the parties in the Contract Area. Each party who participates in the purchase of a renewal or replacement Lease shall be given an assignment of its proportionate interest therein by the acquiring party.

option period, the Defendant was responsible for all costs and entitled to all revenues attributable to the Plaintiff's 25% working interest in the leases located within the "Area of Mutual Interest,"[5] and the Plaintiff was deemed to have gone "non-consent" on any leases or elections that the Plaintiff could have otherwise participated in.[6]

On October 31, 2012, the parties entered into an additional agreement (the Letter Agreement), the purpose of which was to confirm the parties obligations to one another under the existing "Joint Operating Agreement for the Jolly Ranch Project," recognizing that such obligations may have been affected by the 2011 PSA and the Settlement Agreement. The Letter Agreement provides that during the option period the Defendant was required to provide Plaintiff on a quarterly basis with (i) a list and copies of any new leases acquired within the "area of mutual interest;" (ii) an itemized list of acquisition costs for each lease; and (iii) a list of leases that expired, were terminated, or were otherwise lost.

The Defendant exercised its option under the Settlement Agreement in July 2013. The parties then entered into a final purchase and sale agreement (the 2013 PSA) by which the

---

[5] Paragraph 5(b) provides:

> For so long as the option is in effect, and thereafter if [the Defendant] exercises the option, [the Defendant] is responsible for all costs attributable to [the Plaintiff's 25% working interest] and shall be entitled to receive all revenues attributable to such interest in the [Area of Mutual Interest], as if the interest was acquired by [the Defendant] as of [October 8, 2012].

The term "area of mutual interest" is not specifically defined by the Settlement Agreement.

[6] Paragraph 5(c) provides:

> During the term of the option, and in the event the option lapses, [the Plaintiff] will be deemed to have gone non-consent on any elections that otherwise would have been proposed for participation by [the Plaintiff] during the option period.

The term "non-consent" is not specifically defined in the Settlement Agreement.

4

Plaintiff sold to the Defendant its remaining 25% working interest in several leases that were otherwise subject to the Middle Mist JOA, with an effective date of transfer of October 8, 2012.

### B. Specific Leases Subject to the Agreements

*1. The Knutson Bottom Lease*

In March 2008, a lease broker acquired an oil and gas lease, known as the Knutson Bottom Lease, on property located in Lincoln County and subject to the Middle Mist JOA. Under this lease, the landowners retained a 12.5% royalty interest in proceeds from oil and gas produced from the land. The lease had a term of five years and "as long thereafter as oil or gas" is produced from the premises. The lease further provided that if at the end of the 5 year term oil or gas was not being produced, but the lessee was "engaged in drilling or re-working operations" on the property, then the lease would "continue in force so long as operations are being continuously prosecuted."[7]

Because the lease had a five year term, it was set to expire in March 2013, during the option period created by the Settlement Agreement. In late 2012, the Defendant was aware that the lease was expiring and that it needed to begin drilling operations in order to "save" the lease from expiring. Although the Defendant completed a land survey in January 2013 for the purpose

---

[7] After the Knutson Bottom Lease was acquired, a series of assignments took place. First, the lease broker assigned the lease to the Plaintiff, retaining for itself a .5% overriding royalty interest (Assignment No. 1). Next, the Plaintiff assigned to its president, Steven Tedesco, an overriding royalty interest equal to the difference between 20% and "existing lease burdens" (Assignment No. 2). When Assignment No. 2 was made, the existing burdens consisted of the landowner's 12.5% royalty and the broker's .5% overriding royalty. Then, the Plaintiff assigned to the Defendant half of its interest in the lease, reserving an overriding royalty interest equal to the difference between 20% and existing burdens (Assignment No. 3). The reservation in Assignment No. 3 provided that the Plaintiff retained an overriding royalty interest in oil and gas produced under the lease, "including any extension, renew or substitute Leases obtained by [the Defendant] . . . ." The result of Assignment No. 3 was that the parties each held a 50% working interest in the lease, subject to all the reserved overriding royalty interests. The parties then executed Assignment No. 5, by which the Plaintiff conveyed to the Defendant a 25% working interest, reserving an overriding royalty interest equal to the difference between 20% and existing burdens.

5

of obtaining a drilling permit, the Defendant did not actually apply for the permit until February 21, 2013. Thus, the permit was not acquired in time, and the Knutson Bottom Lease expired by its terms in March 2013.

   *2. The Knutson Top Lease*

In January of 2013, the Defendant negotiated and acquired a new lease known as the Knutson Top Lease. The land associated with the Knutson Top Lease is located entirely within the area covered by the Knutson Bottom Lease. The Knutson Top Lease reserved a 15% royalty to the landowners and had a term of one year and thereafter so long as oil or gas was being produced. The lease was also burdened by the broker's .5% overriding royalty interest.

The Plaintiff was not aware that the Defendant acquired the Knutson Top Lease in January 2013. Although the Defendant sent the Plaintiff a copy of the lease, along with copies of several other leases, the copy of this lease was buried in a computer file not easily accessible by the Plaintiff.

The Plaintiff alleges that the Defendant breached the Middle Mist JOA in two ways: (1) by failing to give notice when it acquired the Knutson Top Lease, as was required by Article VIII.B, and (2) by failing to drill on lands covered by the Knutson Bottom Lease and allowing that lease to expire, while at the same time acquiring the Knutson Top Lease and drilling pursuant to that lease. It also seeks a declaration that it holds a 4.5% overriding royalty interest in the Knutson Top Lease by virtue of the language contained in Assignment No. 3. The Plaintiff contends that the Defendant has been receiving proceeds of production from the Knutson Top Lease, but has not made any payment to the Plaintiff attributable to its interests in the proceeds.

The Defendant asserts counterclaims for breach of contract for failing to perform under the 2013 PSA; breach of the warranties provided by the 2013 PSA; and a declaratory judgment as to the Defendant's interest in certain leases and wells conveyed by the 2013 PSA.

The Defendant seeks summary judgment in its favor on the Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

## II. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Thus, the primary question presented to the Court on a motion for summary judgment is, is a trial required?

A trial is required if there are material factual disputes to resolve. As a result, entry of summary judgment is authorized only "when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016). A fact is material if, under the substantive law, it is essential to an element of the claim. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the conflicting evidence would enable a rational trier of fact to resolve the dispute for either party. *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013).

The consideration of a summary judgment motion requires the Court to focus on the asserted claims and defenses, their legal elements, and which party has the burden of proof. Substantive law specifies the elements that must be proven for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). As to the evidence offered on summary judgment, the Court views it

the light most favorable to the non-moving party, thereby favoring the right to trial. *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013).

Motions for summary judgment generally arise in one of two contexts — when the movant has the burden of proof and when the non-movant has the burden of proof. Each context is handled differently. When the movant has the burden of proof, the movant must come forward with sufficient, competent evidence to establish each element of its claim or defense. *See* Fed. R. Civ. P. 56(c)(1)(A). Presumably, in the absence of contrary evidence, this showing would entitle the movant to judgment as a matter of law. However, if the responding party presents contrary evidence to establish a genuine dispute as to any material fact, a trial is required and the motion must be denied. *See Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015); *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).

A different circumstance arises when the non- movant has the burden of proof. In this circumstance, the movant contends that the non-movant lacks sufficient evidence to establish a *prima facie* case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party must identify why the respondent cannot make a *prima facie* showing — that is, why the evidence in the record shows that the respondent cannot establish a particular element. *See Collins*, 809 F.3d at 1137. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, then a trial is required. Conversely, if the respondent's evidence is inadequate to establish a *prima facie* claim or defense, then no factual determination of that claim or defense is required and summary may enter. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

### III. Analysis

**A. Breach of Contract**

The first breach of contract claim focuses on Article VIII.B of the Middle Mist JOA. The Plaintiff claims that the Defendant failed to give it notice and a right to participate in the Knutson Top Lease. Under Colorado law, to prevail on a claim for breach of contract a plaintiff must prove (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting loss to the plaintiff. *See Western Distributing Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). The Defendant contends that the Plaintiff cannot prove the third element, that the Defendant breached the Middle Mist JOA, or the fourth element, that the alleged breach resulted in a loss to the Plaintiff.

With regard to the element of breach, the parties vigorously dispute whether their notice obligations and participation rights with respect to the Knutson Top Lease are governed by the terms of the Middle Mist JOA or the Settlement Agreement. The Plaintiff contends that the terms of the Middle Mist JOA control and that the Knutson Top Lease is subject to the Middle Mist JOA because it is a "renewal or replacement" of the Knutson Bottom Lease. The Defendant argues that the terms of the Settlement Agreement control because the 2011 PSA and the Settlement Agreement modified the parties' rights and obligations under the Middle Mist JOA. For purposes of this opinion, the Court will assume that the terms of the Middle Mist JOA control and that the Knutson Top Lease is subject to the Middle Mist JOA as a "renewal or replacement" of the Knutson Bottom Lease. The Court will also assume that the Defendant breached the Middle Mist JOA by failing to give the Plaintiff notice and an opportunity to participate when it acquired the Knutson Top Lease.

With these assumptions in mind, the Court focuses on whether the Plaintiff can establish a loss caused by this breach. In a breach of contract action, the objective is to place the injured

9

party in the position it would have been in but for the breach.  *See Kaiser v. Market Square Discount Liquors, Inc.*, 992 P.2d 636, 640 (Colo.App. 1999).  A prevailing party is therefore entitled to recover the amount of damages necessary to accomplish that result.  *Id.*

Here, the Plaintiff contends that because the Defendant failed to give it notice of the Knutson Top Lease, it was denied its right to acquire a working interest in the lease, and consequently, has been denied a proportionate share of profits attributable to the lease.  The parties agree that the failure to give notice of the Knutson Top Lease would cause a loss to the Plaintiff if the Plaintiff had a right to acquire a working interest in the lease.  But the Defendant contends that the Plaintiff cannot prove any loss because the Plaintiff actually had no right to participate in the Knutson Top Lease at the time it was acquired.  Thus, the question is whether, under the Middle Mist JOA, the Plaintiff was entitled to an interest in the Knutson Top Lease when it was acquired in January 2013.

Answering this question presents an issue of contract interpretation.  When interpreting a contract, the primary goal is to determine and give effect to the intent of the parties.  *Ad Two, Inc. v. City & Cnty. of Denver*, 9 P.3d 373, 376 (Colo. 2000).  The parties' intent is ascertained primarily from the contract language itself.  Where a written contract is free from ambiguity, it is determined to express the parties' intent and will be enforced according to its plain language.  *Id.*  The Court gives words their plain and ordinary meaning unless the intent of the parties, as expressed in the contract, indicates that an alternative interpretation is intended.  *Figuli v. State Farm Mut. Fire & Cas.*, 304 P.3d 595, 598 (Colo.App. 2012).  Extraneous evidence is only admissible to prove intent where there is an ambiguity in the terms of the contract.  *Ad Two, Inc.*, 9 P.3d at 376-77.  Terms are ambiguous when they are susceptible to more than one reasonable

interpretation. But the mere fact that the parties may have different opinions regarding the interpretation of the contract does not itself create an ambiguity. *Id.*

As noted, Article VIII.B of the Middle Mist JOA provided that if a party secured a renewal or replacement lease, the acquiring party was required to promptly notify the other party, and the notified party had a right to elect to participate in ownership of the lease by paying a share of the acquisition costs. The amount to be paid was determined by looking to the proportionate interest that the notified party held in the land and leases under the Middle Mist JOA at the time the new lease was acquired. Thus, under the plain language of Article VIII.B, the Plaintiff's participation rights in the Knutson Top Lease depend directly on the interest it held in the other land and leases under the Middle Mist JOA at the time it would have received notice of the new lease. The Knutson Top Lease was acquired by the Defendant in January 2013. Thus, the Plaintiff had a right to participate in the lease only to the extent it held an interest in the land and leases subject to the Middle Mist JOA in January 2013.

When the parties executed the Middle Mist JOA in 2007, they each held a 50% working interest in the leases subject to the agreement. Pursuant to the 2011 PSA, the Defendant acquired half of the Plaintiff's working interest in the "Jolly Ranch Project Properties." Because "Jolly Ranch Project Properties" is not defined by the 2011 PSA, it is not clear from the plain language of the agreement the extent to which the 2011 PSA affected the Plaintiff's rights under the Middle Mist JOA. To clarify this ambiguity, the Court considers extrinsic evidence. Mr. Steven Tedesco testified on behalf of the Plaintiff as its president. Mr. Tedesco testified that "Jolly Ranch Project Properties" was a general term that included many properties. He testified that several JOAs fell under the term "Jolly Ranch Project," including the Middle Mist JOA. Based on this undisputed evidence, it is clear that the "Jolly Ranch Project Properties" included the land

11

and leases covered by the Middle Mist JOA. Therefore, as of December 2011, the Plaintiff held only a 25% working interest in the land and leases under the Middle Mist JOA. Then the parties entered into the Settlement Agreement, which set up the option for the Defendant to purchase the Plaintiff's remaining 25% working interest in the "Jolly Ranch Project Properties." Based on the parties' understanding that "Jolly Ranch Project Properties" included the Middle Mist JOA, it is clear that the option established by the Settlement Agreement included the Plaintiff's 25% interest in all the land and leases under the Middle Mist JOA.

The Settlement Agreement provided that during the option period, the Plaintiff was deemed to be "non-consent" on any leases that it could have otherwise participated in. The Settlement Agreement does not specifically define "non-consent," but the Middle Mist JOA provides that "non-consenting" means electing not to participate in a proposed operation. Reading these contracts together, the Court understands the Settlement Agreement to provide that the Plaintiff waived its right to participate in any leases that it received notice of during the option period. Therefore, the Plaintiff had no right to participate in the Knutson Top Lease when it was acquired in January 2013. Additionally, when the Defendant exercised the option in July 2013, the parties retroactively dated their agreement to October 8, 2012. Thus, to whatever extent the Plaintiff held a nominal interest in the Middle Mist properties in January 2013, its interest was extinguished upon the exercise of the option. Because the Plaintiff had no right to participate in the Knutson Top Lease in January 2013, it does not matter whether or not it received notice of the lease.

The Court therefore concludes that the terms of the Settlement Agreement precluded the Plaintiff from acquiring a working interest in the Knutson Top Lease, and the Plaintiff cannot, as a matter of law, establish a loss caused by the Defendant's alleged failure to give notice under

Article VIII.B of the Middle Mist JOA. Because the Plaintiff cannot prove a *prima facie* claim for breach of contract, the Defendant is entitled to judgment in its favor on this claim. *See PurCo Fleet Services, Inc. v. Koenig*, 240 P.3d 435, 438 (Colo. App. 2010) (summary judgment rejecting a breach of contract claim is proper where the party claiming breach cannot prove its damages arising therefrom).

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

The Plaintiff alleges that the Defendant breached the implied covenant of good faith and fair dealing under the Middle Mist JOA by failing to "save" the Knutson Bottom Lease and letting it expire, while at the same time acquiring the Knutson Top Lease and drilling on land covered by the new lease.

Under Colorado law, every contract contains an implied duty of good faith and fair dealing. *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995). The duty of good faith and fair dealing applies when one party has discretionary authority to set or control terms of performance, such as quantity, price, or time. *Id.* The good faith performance doctrine exists to effectuate the parties' intentions and honor their reasonable expectations. *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006). Good faith performance of a contract involves "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Amoco Oil*, 908 P.3d at 498 (citing *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1362 (Colo. App. 1994)). Violating the duty of good faith and fair dealing gives rise to a claim for breach of contract. *City of Golden*, 138 P.3d at 292. Thus, a breach of the implied duty of good faith and fair dealing merely results in damages for breach of contract. *See Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003).

The Defendant contends that the Plaintiff cannot prevail on its claim for breach of the implied duty of good faith and fair dealing because it cannot prove a breach.

Like the previous claim, however, the Court will assume for purposes of this analysis that the Plaintiff could establish that the Defendant breached the implied duty of good faith and fair dealing under the Middle Mist JOA. Although not raised by the parties, the Court sees that this claim may fail for same reason as the first breach of contract claim — lack of injury or loss.

The Plaintiff alleges that the Knutson Bottom Lease "had value" at the time it expired and therefore the Defendant's breach resulted in a loss. The extent to which the Knutson Bottom Lease had value to the Plaintiff depends on the interests the Plaintiff held in the lease when it expired.

The Knutson Bottom Lease expired in March 2013, during the option period. At that time, the Plaintiff arguably had two interests in the lease. The first was a 25% working interest. As discussed above, pursuant to the Settlement Agreement, the Plaintiff restricted the value of this interest by the option it gave the Defendant. When the Defendant exercised its option in July 2013, the Plaintiff's interest was extinguished retroactively to October 8, 2012. Consequently, the Plaintiff had no valuable working interest in the Knutson Bottom Lease when it was lost.

The Plaintiff's second interest in the Knutson Bottom Lease as of March 2013 was a reserved overriding royalty in the amount equal to the difference between 20% and existing burdens. The parties agree that when the Knutson Bottom Lease was assigned to the Plaintiff by the lease broker, there were existing lease burdens totaling 13% (this amount was comprised of a 12.5% royalty to the landowner and a .5% overriding royalty to the land broker). In Assignment No. 2, however, the Plaintiff assigned to Steven Tedesco an overriding royalty interest "in the amount equal to the difference between existing lease burdens and an undivided twenty-percent."

Because the existing burdens at the time were 13%, the overriding royalty interest assigned to Mr. Tedesco was 7%, bringing the total lease burdens to 20%.

In Assignment No. 3, the Plaintiff assigned the Defendant half of its working interest in the Knutson Bottom Lease, but reserved an overriding royalty interest equal "to the difference between existing lease burdens and an undivided twenty-percent." But when Assignment No. 3 was executed, the existing lease burdens were already at 20%. Thus, the reservation did not result in any interest at all. Further, in the series of assignments executed after Assignment No. 3, the Plaintiff continued to reserve an overriding royalty interest equal to the difference between 20% and existing burdens. But the existing burdens continued to equal 20% (12.5% to the landowners, .5% to the land broker, and 7% to Mr. Tedesco). Thus, although the Plaintiff may have held an overriding royalty in the Knutson Bottom Lease, the royalty was valueless. Because the Plaintiff's royalty interest was valueless at the time the lease was lost, the Plaintiff cannot prove that it suffered any loss.

The Court regards the Plaintiff's inability to prove a loss to be fatal to its claim and therefore intends to enter judgment in favor of the Defendant. However, because the Court raises this issue *sua sponte*, it will reserve ruling on this claim for the time being. Instead, the Plaintiff is granted 21 days in which to supplement the record to prove a loss caused by the Defendant's alleged breach of the implied duty of good faith and fair dealing. Failure to do so will result in judgment entering in favor of the Defendant on this claim.

## IV. Conclusion

For the forgoing reasons, the Defendant's Motion for Summary Judgment **(#76)** is **GRANTED IN PART AND RESERVED IN PART**. The Motion is granted with respect to the Plaintiff's breach of contract claim. The Court reserves ruling as to the Plaintiff's claim for

breach of the implied duty of good faith and fair dealing.  The parties hereby given notice pursuant to Fed. R. Civ. P. 56(f) that the Court intends to grant the Defendant's motion as to the claim for breach of the implied duty of good faith and fair dealing on grounds not raised by the Defendant.  The Plaintiff is granted 21 days to submit additional evidence and briefing.  The Defendant may respond within 21 days thereafter.  No reply brief will be filed.

The other claims remaining in this case are the Plaintiff's claim for declaratory judgment as to its overriding royalty interest in the Knutson Top Lease, and the Defendant's counterclaims related to the 2013 PSA.

The parties are directed to begin preparation of a joint proposed final pretrial order, as set forth in the previously-issued Trial Preparation Order **(#32)**.  The parties shall *jointly* contact chambers within 10 days of the date of this Order to set a final pretrial conference.

Dated this 30th day of March, 2016.

**BY THE COURT:**

/s/ Marcia S. Krieger

Marcia S. Krieger
Chief United States District Judge